Oscar D. Brissenden, as Successor Trustee Under the Last Will and Testament of Mary H. Babcock, Deceased, Plaintiff-Appellee, v. Joseph S. Babcock, et al., and the American Red Cross, a Corporation, Defendants-Appellees, The Salvation Army, a Corporation, Defendant-Appellant.

Gen. No. 10,948.

Fourth District.

October 10, 1968.

Rehearing denied November 13, 1968.

Niven and Clay, of Pontiac (Alonzo William Clay, of counsel), for appellant.

Irving Goodman, of Chicago, Fellheimer & Fellheimer, and Ortman, Johnson & Taylor, of Pontiac, for appellees.

SMITH, P. J.

In essence, the issue before us is one of construction. Other avenues have been suggested for resolution, some rather attractive, but we shun to travel them for the very simple reason that we lack an imprimatur in the record. Upon argument exploration of such avenues seemed worthwhile and we suggested and received supplementary briefs directed to a possible disposition by way of res judicata, consent or estoppel. Whatever momentary appeal these doctrines had has now vanished for, as we have said, the right context is absent on which they might be premised. It is beside the point that the parties might have made it right had they wanted to.

Before setting out the language which we must construe, a brief résumé of the limited context which we have is appropriate. A trust created by will provides that the income from the estate is to go to certain persons for their lives, but for no longer than fifty years. Upon termination whether through the expiration of such period or the death of the last survivor, the estate passes to the Salvation Army and the American Red Cross. The real estate comprising the trust is adaptable for quarrying purposes and in 1945 the trustee advised the court that he had a written offer to lease the real estate for such purpose. This right was contested. In 1956, the trustee, the life beneficiaries and the remaindermen, the Salvation Army and the American Red Cross entered into a stipulation authorizing the trustee to execute a lease. Following the filing of the stipulation, a consent decree was entered authorizing the trustee to negotiate a lease, which he promptly did and the same was approved by the court early in 1957. Since then, we are told, the trustee has made periodic accountings, but the only accounting we are concerned with is his report for the period

208

January 1, 1967–June 30, 1967. The order approving this account over the objections of the Salvation Army is now before us. These objections take aim at deductions by the trustee for his fee and that of his attorney. Specifically, the trustee for the period involved received $22,649.35 from the lessee, and the Salvation Army contends that it is entitled to its proportionate share thereof absent such deductions, that is, his stipulated percent, nothing more, nothing less. We are not concerned with the reasonableness of the fees nor their rectitude as such, only who should pay them, or more correctly, who need not. A determination depends upon the meaning of the following excerpted paragraphs of the stipulation.

"(d) That 50% of the net consideration so received during the period beginning January 2, 1967, and ending December 31, 1977 (if the trust shall so long continue), shall be distributed by the trustee, share and share alike, to American Red Cross and to the Salvation Army; and that the remainder of such net consideration shall be treated as income, and shall be distributed by the trustee, under the direction of the Court, to those persons entitled to the income from said trust under the terms of the will of the late Mary H. Babcock.

"2. In computing net consideration, for the purpose of determining amounts payable to the American Red Cross and to the Salvation Army, no Federal income tax which may be paid, or payable, by the trustee shall be deducted from the gross consideration received by the trustee."

If the (d) paragraph stood alone we might be inclined to agree with the Salvation Army. The word "net" would seem to relate to deductions which the lessee might take— the "net consideration so received," and that after being so received, the trustee is to do nothing more than transmit 25% thereof to the Salvation Army. We say we are

209

inclined to this view, but not necessarily—it is not the most reasonable interpretation, but regardless of that, we must read this text in the context of the second quoted paragraph.

It is not uncommon for terms in a contract to be defined and it seems to us that we have such here though imperfectly expressed. In other words, we must infer from these paragraphs the propriety of these deductions, as their propriety is not expressly stated—but almost. However, the implications are clear—so clear, in fact, that one might quibble that they are not express, but we will stand by our earlier characterization that if express, their expression is imperfect.

As nouns, the "net" is that which remains after deductions from "gross," or "gross" is an amount before deductions are taken to arrive at "net." Their adjectival meanings are the same. The everyday definition of "net," whether used with "consideration," "profit," or "income," is the consideration, profit, or income remaining after all charges and deductions, and the "gross consideration," "profit," or "income," is the consideration, profit or income before charges and deductions. Used here as an adjective the implication is surely that deductions are contemplated after the trustee receives the rentals and before he passes along the "net" to the Salvation Army, the American Red Cross and others. In fact, as we have said, the second paragraph almost, but not quite, says just that. It says that the trustee will receive from the lessee a "gross consideration" and that in determining the amount payable to the Salvation Army, no Federal income tax "which may be paid, or payable" shall be deducted by the trustee from such "gross consideration"—and does this not at the very least imply that there will be other deductions? A direction to the trustee not to deduct something, carries with it the implication that there will be deductions. A fortiori, a direction to a trustee not to deduct something "in computing net consideration," clearly *expresses* that there *will* be *computations* and if you are

not to deduct something in making the computation, the implication is clear that there must be other deductions—and these deductions here will come from "gross consideration received by the trustee," and what is left, is "net consideration." The current account before us shows no amounts paid for Federal income tax, hence if we were to accept the argument of the Salvation Army, they would be entitled to the "gross consideration received by the trustee," but the language here negates that, for it says that there will be a computation to determine "net consideration, for the purposes of determining the amounts payable to" the Salvation Army.

The trustee here is directed to make a computation with regard to a thing called "gross consideration," and the purpose of the computation is to determine the "net consideration." To get from gross to net involves deductions from gross; but the trustee is not to deduct from gross any amounts "paid or payable" for income taxes. He is thus not a mere "conduit," as the Salvation Army would have us believe. If he was to be a "conduit," it would have been easy to have said, "No deductions shall be made by the trustee for any purposes from the amount so received from the lessee." Instead of this, the stipulation says that the trustee, "In computing net consideration, for the purpose of determining amounts payable" to Salvation Army "no Federal income tax" paid or payable "shall be deducted from the gross consideration by the trustee." If the trustee is a mere remittance-man, why direct him to make a computation for the purpose "of determining amounts payable" to Salvation Army? We are bound by the words the parties chose. The trustee correctly computed "net consideration" for the purpose of determining the amount payable to the Salvation Army and its objections were properly overruled. The order approving the current account of the trustee is affirmed.

Affirmed.

CRAVEN and TRAPP, JJ., concur.